**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**DIANE L. CHIRESS,**

       **Plaintiff,**

**-vs-**               Case No. 6:09-cv-883-Orl-31DAB

**COMMISSIONER OF SOCIAL
SECURITY,**

       **Defendant.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

  The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

  The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

  For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

### *I. BACKGROUND*

**A. Brief Summary of Procedural History**

  Plaintiff's case has a complicated history with repeated of remands for new hearings (which is discussed at length below). Plaintiff filed for a period of disability, DIB and SSI benefits on January 21, 2003, alleging an onset of disability on January 9, 2003, due to back pain, knee pain, and

obesity. R. 47, 48, 144-46, 521-25. Her application was denied and, following a series of remands to the ALJ, the Appeals Council eventually adopted and modified portions of the ALJ's opinion to find that Plaintiff could perform her past relevant work (PRW) as a folder and maid, and was therefore not disabled. R. 4-9. The AC's April 10, 2009, decision became the final decision of the Commissioner. Plaintiff timely filed this action for judicial review on May 26, 2009. Doc. No. 1.

**B.     Medical History and Findings Summary**

Plaintiff was born October 29, 1956, and has a ninth grade education with no GED. R. 144, 504. Her longest employment was for a mental health facility from 1982 to 1994. R. 176.

Plaintiff's medical history is set forth in detail in the ALJ's decision. Plaintiff complained of back pain, knee pain, and obesity. R. 47, 48, 521-25. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a history of low back pain due to degenerative disc disease of the lumbar spine, history of hypertension and a history of iron deficiency anemia, history of obesity, history of right synovial cyst removal at L3/L4, history of right carpal tunnel release with good result and history of mild degenerative joint disease of the cervical spine, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 23-24.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform medium work, except she has occasional limitations related to obesity in terms of bending, stooping, kneeling, crawling, and climbing ramps/stairs. R. 25. She was precluded from using ladders/scaffolds or working at heights, but she could frequently balance and had no manipulative problems, but was precluded from working in proximity to extreme vibration or cold temperatures. R. 25. Based upon Plaintiff's RFC, the ALJ determined that she could perform past relevant work as a laundry operator,

folder, maid and janitor, which jobs do not require the performance of work-related activities precluded by the claimant's credible residual functional capacity. R. 29. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 29.

The AC adopted in part and modified the ALJ's findings to hold that Plaintiff could perform a reduced range of light work (rather than finding Plaintiff could perform a reduced range of medium work as the ALJ found); and Plaintiff could perform her past relevant work as a folder and maid. R. 13. On April 10, 2009, the AC issued its final notice of unfavorable decision with these findings. R. 8-9.

Plaintiff now asserts two main points of error. First, she argues that the AC erred in failing to consider (or even comment upon) new and material evidence she timely submitted before the AC finalized its decision that Plaintiff was not disabled. Second, she claims the ALJ erred by finding she had the RFC to perform her past relevant work contrary to her treating doctors' statements. Because the Court finds that the evidence timely submitted by Plaintiff was new and material, and thus should have been considered, but was not, the Court finds that a sentence six remand for the consideration of this evidence is warranted. For this reason, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The ALJ must ordinarily follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

This appeal which turns on whether "new and material" evidence submitted by Plaintiff after the ALJ decision should have been considered by the AC, which it was not. When a plaintiff submits additional evidence to the Appeals Council and the Appeals Council denies review, the court must determine whether the Commissioner's decision is supported by substantial evidence on the record as whole. *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007); *Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL 2492460, *7 (M.D. Fla. Aug. 30, 2007) (under *Ingram*, the court reviews whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council). "To

succeed on a claim that remand is appropriate [the claimant] would [have] to show that (1) new, non-cumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### *III. ISSUES AND ANALYSIS*

**A.     New and material evidence**

Plaintiff contends that the AC erred by not applying the proper legal standard with respect to additional evidence she submitted to the AC and by making the decision on an incomplete administrative record which failed to include this additional evidence. The Commissioner concedes that Plaintiff's evidence was timely submitted, but argues that the evidence is not material in that it is not relevant to the time period of the ALJ's decision, thus the case should not be remanded.

A detailed description of the procedural history in this case is necessary to assess the "materiality" of the evidence submitted by Plaintiff. Plaintiff filed for a period of disability, DIB and SSI benefits on January 21, 2003, alleging an onset of disability on January 9, 2003. R.144-46. Following denial of Plaintiff's application initially and upon reconsideration, she requested a hearing before an ALJ, which was scheduled for March 24, 2005; however, her request for hearing was dismissed when she failed to appear at the scheduled hearing. R. 49-52 (April 12, 2005). Plaintiff requested Appeals Council (AC) review of the dismissal, and, on May 27, 2005, the AC granted Plaintiff's request for review and remanded the case for a new hearing, finding Plaintiff's explanation of her failure to appear – side effects from medication caused her confusion – was reasonable. R. 87-89. The AC remanded her case for the first time.

Following a new hearing on October 19, 2006 before a different Administrative Law Judge, John D. Thompson, Jr. (the "ALJ"), the ALJ determined after consideration of the evidence that Plaintiff was not disabled in a decision dated December 22, 2006. R. 53-62. Plaintiff requested AC review of the unfavorable decision. On May 9, 2007, the AC granted Plaintiff's request for review and, in a fairly detailed order, remanded the case for the ALJ to obtain additional evidence of Plaintiff's impairments, including, if warranted, a consultative orthopedic examination and medical source statement about Plaintiff's capabilities despite her impairments. R. 122-25. This was the second time Plaintiff's case was remanded.

Following a new hearing on January 16, 2008 (R. 575-619), the ALJ again found Plaintiff was not disabled in a decision dated February 28, 2008. R. 17-29. Plaintiff again requested AC review on March 28, 2008 (R. 16), and on December 5, 2008, the AC issued a notice stating it was reviewing the ALJ's February 28, 2008 decision. R. 12-15. The AC stated that it planned to issue a corrective decision adopting the December 2006 ALJ's residual functional capacity (RFC) assessment, but modifying it to find that Plaintiff could perform a reduced range of light work rather than a reduced range of medium work (as the ALJ found). R. 13. The AC also found Plaintiff could perform her past relevant work as a folder and maid. R. 13. The AC gave Plaintiff thirty days from December 5, 2008 to submit additional information. R.. 13-14. On January 30, 2009, the AC granted Plaintiff additional time to submit evidence, which had to be "new and material" to the issues considered in the ALJ's February 28, 2008 decision. R. 10-11. According to exhibits submitted in this appeal and uncontroverted by the Commissioner, Plaintiff's counsel timely submitted additional evidence to the AC on February 26, 2009. R. 30 (undated letter from counsel); Doc. No. 14-1 to 14-4.

However, on April 10, 2009, when the AC issued its final notice of an unfavorable decision, it failed to note that Plaintiff's counsel had submitted *any* additional evidence. R. 4-9. The AC decision stated:

> The claimant asked the Appeals Council to review the [ALJ's] decision dated February 28, 2008. . . . The Council also notified the claimant and the representative that it would consider any comments or new and material evidence that the claimant or the representative submitted within 30 days from the date of the notice. *No comments or additional evidence have been received.*

R. 7. Consequently, the AC failed to comment on any of the evidence submitted by Plaintiff in February 2009, and it failed to consider whether such evidence warranted remand to the ALJ. Instead, the AC merely reiterated its preliminary December 2008 finding that Plaintiff could perform a reduced range of light work, could perform her past relevant work as a folder and maid, and was not disabled. R. 8-9.

On February 2, 2009 Plaintiff's counsel submitted written exceptions to the AC's Notice of Decision - Unfavorable in the form of pharmacy information sheets with her alleged side effects underlined; Plaintiff has filed the proof of mailing by certified mail return receipt requested on February 2, 2009. Doc. Nos. 14-1; 14-2. On February 26, 2009 Plaintiff's counsel also submitted evidence consisting of the December 8, 2008 MRI of her lumbar spine and treatment notes from Plaintiff's treating orthopaedic physician, George Telesh, M.D. Doc. Nos. 14-3; 14-4 (express mail receipt showing delivery on February 27, 2009).

The Court finds that the December 23, 2008, orthopedic treatment notes from Dr. George Telesh, and the December 18, 2008, lumbar spine MRI report are new and material evidence that the AC should have considered, and because this evidence was not in the administrative record, or considered by the AC, the AC's decision was not based on substantial evidence. The Commissioner concedes that the certified mail receipts attached to Plaintiff's brief "appear to be inconsistent" with

the AC's statement that it had received no comments or additional evidence from Plaintiff or her representative. R. 7. Although the AC cited in its April 2009 decision to its December 5, 2008 letter granting 30 days to submit additional information – presumably to January 2009, the AC had subsequently granted Plaintiff an additional 30 days to submit new information on January 30, 2009, *i.e.*, until March 2, 2009. R. 10-11 ("We have granted your request for more time before we act on your case).

The Commissioner also concedes that the AC failed to incorporate the additional evidence into the record. Doc. No. 16. However, the Commissioner argues that the AC's failure to acknowledge or consider Plaintiff's new evidence at the appeals stage does not warrant a remand because the evidence was not material. Under long-standing Eleventh Circuit precedent, to succeed on a claim that remand is appropriate, the plaintiff has to show that (1) new, non-cumulative evidence exists, (2) the evidence is material "such that a reasonable possibility exists that the new evidence would change the administrative result," and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level. *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

In considering the December 2008 MRI and Dr. Telesh's treatment notes, the Commissioner concedes that Plaintiff has satisfied two of the three prongs, in that this evidence is new and non-cumulative, and Plaintiff submitted the evidence at the appropriate time at the administrative level. The only issue that the Commissioner disputes is whether the evidence is "material," *i.e.,* "such that a reasonable possibility exists that the new evidence would change" the administrative result – the AC's decision. The AC was not required to consider the new evidence of orthopedic surgeon treatment in December 2008 because, the Commissioner argues, it did not relate to the period on or before the date of the ALJ's decision, February 28, 2008. R. 10. The Commissioner's position is incorrect.

First, the evidence does relate back to Plaintiff's prior back complaints, which began as early as 2003. As the Medical Expert, Dr. Charles Hancock, a retired orthopedic surgeon, described Plaintiff's medical history applicable to her back pain:

> She gives a history of having chronic back pain since January of . . . 2003 and had been receiving treatments for that in the form of medication and trial of cervical as well as upper epidural steroid injections and they [gave] partial relief. It didn't give total relief but she also had some complaints about pain and arthritis in the knees. Left knee more so that the right but that responded to aspiration and injection of steroids into the left knee. . . . She had, in addition to the complaints of back pain, she's had pain going from the back into the hip and leg and she's also given a history of allegation that she's been diagnosed was having rheumatoid arthritis. . . . She's had several MRI scans of the cervical as well as the lumbar spine. The cervical MRI is not as severe and shows small defects but nothing that I would consider and nothing that the treatment physician considered significant enough to require surgery. Physical therapy was recommended but declined on a financial basis. MRI of the lumbar spine did show a number of extra dural defects and some evidence of spinal stenosis into the lateral recesses and the fact joints with an atrophy of the facet joints and some degeneration of the facet joints and these encroach on the parameter of giving her some potential cause for the brain coming from the compression at the facet joint. She also complains of some shoulder pain but no specific cause for that was found, nothing like a rotator cuff tear and she's had EMG, nerve conduction studies and as I mentioned before the findings there were consistent with carpal tunnel syndrome or cervical radiculopathy at CAP1 and an S1 radiculopathy of the left lower extremity. . . . She does have degenerative disease of her lumbar and cervical spine and degenerative arthritis in the knees.

R. 582-83. The ALJ relied on Dr. Hancock's opinion that Plaintiff could sit, stand, and walk for at least six hours in an eight-hour day with appropriate breaks (light work). R. 597-98. The ALJ noted, and Dr. Hancock agreed that Plaintiff had not received any ongoing "more involved" treatment for problems which she may have had in the cervical spine. R. 597.

The Commissioner's attempts to downplay the findings on the MRI and in Dr. Telesh's notes are unpersuasive. Plaintiff's most significant complaint in her medical history is for chronic back and neck pain. The Commissioner emphasized that Dr. Telesh's notes show Plaintiff reported that she had only been having low back and right leg pain "for the past several weeks"[1] and that Plaintiff was

---

[1] Dr. Telesh noted that "this has been a chronic condition." Doc. No. 14-3 at 3.

"in no acute distress, with only a slightly antalgic gait, and fairly good thoracolumbar range of motion and good leg strength"; as well as conservative treatment[2].

However, the record is clear that Plaintiff had a history of back problems and pain, for which she sought treatment between 2002 and 2006. Because she could not afford medical treatment, she often sought treatment at the emergency room. R. 523-533. In 2002, Dr. Malcolm D. Gottlich diagnosed Plaintiff with right side lumbar radiculopathy, based on an MRI and thin section imaging. R. 241. A November 15, 2002 MRI found "an abnormality which is centered around the articular facet … at the L4-5 level," degenerative hypertrophy, and "significant narrowing" of the left neural foramen. R. 320. A February 4, 2003 myelogram found "mild extradural defects on the anterior aspect of the spinal canal at the levels of L3-4 and L4-5." R. 435. A February 4, 2003 CT scan found broad based bulging of the L4-5 disc with hypertrophy of the ligamentum flavum which is narrowing the spinal canal; mild bulging of L3-4 with bony degenerative changes and hypertrophy of the ligamentum flavum, causing mild narrowing of the spinal canal; and prominent facet arthritis of the right facet joint at L3-4. R. 436.

In 2003, Dr. Albert W. Gillespy diagnosed L4-5 moderately severe spinal stenosis, L3-4 mild spinal stenosis, right side lumbar radiculitis, and lumbar spine degenerative disc disease and osteoarthritis, based on examination, a myelogram, a CAT scan, X-rays and an MRI. R. 235. Dr. Gillespy discussed conservative treatment, steroid injections and surgery. R. 235. On August 15, 2003, Plaintiff was treated at Florida Hospital for chest pain and chronic back pain. R. 279, 281. On January 1, 2004, Plaintiff was treated at Florida Hospital for dizziness, tiredness and leg pain. R. 270, 272. On October 6, 2003 and December 8, 2003 Plaintiff went to the Atlantic Urgent Care Center emergency department for back pain. R. 309, 313.

---

[2]Dr. Telesh actually referred Plaintiff to pain management to consider epidural injections. Doc. No. 14-3.

From 2002 to 2004, Dr. Shah treated Plaintiff for chronic low back pain from degenerative disc disease. R. 291-304. Dr. Shah gave medications and discussed Plaintiff seeing a surgeon. R. 303. On March 9, 2004 Plaintiff went to Halifax medical center for "acute exacerbation of chronic low back pain"; Plaintiff was advised to see a surgeon. R. 306-07. On May 7, 2004 Plaintiff was treated for back pain at Halifax medical center and she returned there on July 22, 2004, complaining of two days of back pain. R. 335, 353. X-rays found degenerative changes. R. 353.

On October 22, 2004, Dr. Shah found tenderness in both SI joints and the right sciatic notch, positive straight leg testing; diagnosed chronic low back pain and bilateral sacroiliitis with radiculopathy; and he set a plan for physical therapy. R. 356. On October 26, 2004, therapy assessing SI joint pain found functional limitations in sitting, standing, walking, bending. R. 359.

On August 15, 2005, Dr. Rhodes performed a steroid injection in the left knee. R. 395. In a December 21, 2005 examination Dr. Rhodes found tenderness and reduced range of motion, and diagnosed lumbrosacral spondylosis with chronic low back pain, right sacroiliitis, recurrent right radiculitis, early degenerative arthritis in the left knee, and bilateral bursitis and tendinitis. R. 394. On June 7, 2005 Plaintiff was seen at Florida Hospital for back pain and pain in both knees, which was found to be chronic and moderate to severe. R. 401-02. She returned two weeks later, on June 20, 2005, complaining of pain in the back and both knees lasting two days, with medications not working. R. 404. She was seen a week later on June 30, 2005, at Halifax Hospital for back pain. R. 448. A month later, on October 19, 2005, Plaintiff returned to Halifax complaining of joint aches, and had diffuse tenderness in the hips, knees and ankles, and bilateral pain was diagnosed. R. 446. On December 30, 2005, Plaintiff returned again to Halifax medical center for chronic recurrent back pain (R. 442) and diffuse tenderness was found over the back. R. 443. A March 27, 2006 MRI found

degenerative disc disease maximal at C6-7 with uncovertebral joint hypertrophy mildly narrowing the neural foramen. R. 391.

Plaintiff submitted the December 18, 2008 lumbar MRI and December 23, 2008, treatment notes from Dr. Telesh at the Orthopedic Department. *See* Doc. No. 14-3. The Commissioner argues that because the dates on the notes and MRI were from December 2008 and the ALJ's decision was dated February 28, 2008 the evidence could not relate back to her condition ten months prior. However, Dr. Telesh's notes or the MRI results he discusses, were not so inconsequential or unrelated to Plaintiff's prior back condition, well documented from 2002 to 2006. Dr. Telesh determined, based on the MRI, that Plaintiff suffered from right sided sciatica and had an eccentric disk bulge at L4-L5; it extended laterally and abutted the right 4th nerve root both outside and within the neural foramen; it was "very impressive on the saggital images" as well as mild disk bulges at L3-4 and L5-S1, and L3-L4 lumbar degenerative disc disease. Doc. No. 14-3. She was referred to pain management for injections.

The Court finds that the December 2008 evidence is material "such that a reasonable possibility exists that the new evidence would change" the AC's decision and/or the ALJ decision.[3]

### *IV. CONCLUSION*

Accordingly, the Court respectfully **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to **sentence six** of 42 U.S.C. § 405(g) for consideration of new and material evidence timely submitted by Plaintiff. If this Recommendation is adopted, the Clerk should be directed to close the file administratively and the parties to file a status report every three months regarding the further administrative proceedings.

---

[3] The Court does not find that the pharmacy medication printouts or the Physicians' Desk Reference of Plaintiff's medications are new or "material" evidence because they are merely "possible" side effects and Plaintiff testified at the hearing that she did not experience any side effects from her medications. R. 546.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 4, 2010.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy